```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


JUDITH MENDEZ,                      )
                                    )
          Plaintiff                 )
                                    )
     v.                             )   Case No. 2:03 cv 309
                                    )
JO ANNE B. BARNHART,                )
COMMISSIONER OF SOCIAL SECURITY     )
                                    )
          Defendant                 )
```

OPINION AND ORDER

This matter is before the court on the Application For Attorneys' Fees Under The Equal Access to Justice Act filed by the plaintiff, Judith Mendez, on May 30, 2006, and the Motion For Relief From Judgment And Response to Plaintiff's Application For Attorneys' Fees filed by the defendant, Jo Anne B. Barnhart, Commissioner of Social Security, on July 24, 2006. For the reasons set forth below, the Commissioner's motion for relief under Federal Rule of Civil Procedure 60(b) (DE 40) is **GRANTED**, and the plaintiff's application for fees is **GRANTED IN PART**.

Background

On December 19, 2003, Judith Mendez sought review of the Social Security Administration's decision denying supplemental security income benefits. In denying benefits, the Administrative Law Judge decided that Mendez did not meet the listing for mental retardation at 12.05(C) because her IQ scores were above 70. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also concluded that Mendez did not meet the listing's second requirement because she

did not show "a physical or other mental impairment imposing additional significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 This court affirmed the Commissioner's final decision.

Before the Seventh Circuit, the Commissioner argued that the administration's listing at 12.05(C) required the ALJ to make a threshold showing that "the claimant is mentally retarded as defined in Section 12.05's introductory paragraph." **Mendez v. Barnhart**, 439 F.3d. 360, 362 (7th Cir. 2006). The circuit court noted that the government, "in defending the ALJ's decision on a ground that he himself did not mention," violated the **Chenery** principle and also found that the argument lacked merit. **Mendez**, 439 F.3d at 361. The circuit court stated that Mendez was not required to make this threshold showing, that the ALJ misapplied the regulation in determining Mendez's IQ, and that the ALJ's conclusion that Mendez had no other impairments was not adequately grounded in the evidence. The circuit court went on to conclude that the ALJ's evaluation of Mendez as less than credible was "undermined by his literalism" and that the ALJ had failed to consider the totality of Mendez's impairments. **Mendez**, 439 F.3d at 362-363.

Following the decision of the Seventh Circuit, Mendez applied for fees under the Equal Access To Justice Act on May 30, 2006. Mendez initially sought $26,840.19 in fees, later amended to $31,926.01 to reflect attorney hours that had been mistakenly excluded from the application.  The Commissioner offered no

2

response, and on July 10, 2006, this court granted Mendez's application. On July 24, 2006, the Commissioner filed a response to Mendez's application for fees and a motion seeking relief from judgment under Federal Rule of Civil Procedure 60(b)(1).

<u>Discussion</u>

Federal Rule of Civil Procedure 60(b)(1) provides that "upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect." Such neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 394, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993). A showing of excusable neglect need not be based upon "extraordinary circumstances," and may instead include "omissions through carelessness and mistake." *Robb v. Norfolk & Western Railway Company*, 122 F.3d 354, 359 (7th Cir. 1997)(*citing* *Matter of Bulic*, 997 F.2d 299, 302 (7th Cir. 1993)). However, "inattentiveness to the litigation is not excusable." *Robb*, 122 F.3d 360 (*quoting* *Matter of Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996). *See also* *Harrington v. City of Chicago,* 433 F.3d 542, 546 (7th Cir. 2006)("Although attorney carelessness can constitute 'excusable neglect' under Rule 60(b)(1), attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant.") (*quoting* *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir.2004). Ultimately,

3

the court makes an equitable determination, weighing the danger of prejudice, the impact of the delay on the proceedings, the reasons for the delay, and the motivations of the moving party. See **Pioneer**, 507 U.S. at 395, 113 S.Ct. at 1498.

The attorney for the Commissioner did not demonstrate the "outright disregard for court orders and rules of procedure" that have warranted the denial of a Rule 60(b) motion. See **Harrington**, 433 F.3d at 545, n.1. Further, the plaintiff overreaches in her attempt to limit the Supreme Court's decision in **Pioneer** to its initial setting as a bankruptcy case. The standard for "excusable neglect" is consistently applied across the federal rules. See **Robb**, 122 F.3d at 359 ("Although **Pioneer** involved Bankruptcy rule[s], the Court also discussed the meaning of the term 'excusable neglect' as it is used elsewhere in the array of federal procedural rules.").

The circumstances of this case do not warrant denying the Commissioner's motion for relief. The reason for the delay in responding to Mendez's application was based upon the retirement of the assistant United States attorney originally assigned to this case. This attorney retired when Mendez's social security appeal had been terminated, after this court affirmed the ALJ's decision. The attorney who was assigned the prior AUSA's workload may have been able through greater diligence to have responded to Mendez's fee application in a more timely manner, however, the delay was not the product of bad faith nor has it unduly prejudiced the plaintiff. The loss by the plaintiff of an uncontested

4

fee application is not equal to a showing of prejudice. Accordingly, the court will address the Commissioner's substantive objections to Mendez's EAJA application.

The EAJA provides that a prevailing plaintiff in a civil action against the United States is entitled to recoup reasonable attorney fees and other expenses, "unless the court finds that the position of the United States was substantially justified, or that special circumstances make the award unjust."  28 U.S.C. §2412(d)(1)(A); **Conrad v. Barnhart**, 434 F.3d 987, 989 (7th Cir. 2006). The plaintiff must submit a fee application and itemized statement "to the court within 30 days of final judgment." **United States v. Hallmark Construction Company**, 200 F.3d 1076, 1078-79 (7th Cir. 2000). *See also* 28 U.S.C. §2412(d)(1)(B). The trial court's award of attorney's fees under the EAJA is reviewed for abuse of discretion. **Pierce v. Underwood**, 487 U.S. 552, 560, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988); **Golembiewski v. Barnhart**, 382 F.3d 721, 723 (7th Cir. 2004).

The Commissioner's position is substantially justified if it has a "reasonable basis in both law and fact." **Pierce**, 487 U.S. at 565, 108 S.Ct. at 2550. The United States bears the burden of showing that "its position was grounded in (1) a reasonable basis in truth for the theory propounded; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." **Hallmark Construction Company**, 200 F.3d at 1080.  In determining whether fees should be awarded under the EAJA, the trial court does not

5

reevaluate the merits of the underlying case but instead must "analyze the actual merits of the government's litigating position." *Golembiewski*, 382 F.3d at 724. *See also* *Hallmark*, 200 F.3d at 1080-81. The assessment of the government's position encompasses the pre-litigation and litigation conduct of the government and "makes only one determination for the entire civil action." *Conrad*, 434 F.3d at 990. Finally, the ultimate outcome of the litigation does not conclusively determine whether the government's position was substantially justified. *See* *Hallmark Construction Company*, 200 F.3d at 1079-80 ("Conceivably, the Government could take a position that is not substantially justified, yet win, even more likely it could take a position that is substantially justified, yet lose.").

The circuit court remanded this case based in part on the ALJ's misapplication of the administration's listings. Specifically, the Commissioner defended the ALJ's decision by arguing that in order to meet the requirement of the introductory paragraph of Listing 12.05, a claimant must show mental retardation and then separately show that subaverage intellectual and adaptive functioning manifested prior to age 22.  The Seventh Circuit rejected this argument, noting that it violated the *Chenery* principle. *SEC v. Chenery*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed 626 (1943). *See also* *Banks v. Gonzales*, 453 F.3d 449, 451 (7th Cir. 2006)("We must remand - for judges cannot resolve administrative litigation on grounds the agency ignored."). Nevertheless, the circuit court went on to state that "it would not help the

6

government if we overlook the violation," and it concluded that the listing requires only a showing that "deficits" manifested prior to age 22, not an initial showing of mental retardation. *Mendez*, 439 F.3d at 362. The case that the Commissioner relies on to continue to press this point in her response to Mendez's EAJA application offers no support. See *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006)("However, this court disagrees with the Commissioner that the listing's introductory paragraph requires a formal diagnosis of mental retardation."). The Commissioner argues now that she did not state that the listing required a "formal diagnosis." This statement is difficult to reconcile with the Commissioner's original stance on this topic, stating that "in order to meet [the introductory] diagnostic description of Listing 12.05(C), Plaintiff was required to demonstrate (1) she was mentally retarded." (Memorandum In Support Of Commissioner's Decision, p. 13). The Commissioner's justification appears to hinge on the fact that she did not use the word "formal." This is a distinction of little relevancy. The Seventh Circuit's conclusion, like the Eighth Circuit, is that a claimant need not show mental retardation preliminarily before an ALJ may determine she is mentally retarded.

In addition to this legal error, the Seventh Circuit noted that the ALJ lacked a factual basis for denying that Mendez met this listing. The circuit court stated that "[t]he administrative law judge did not apply the regulation that we have quoted, however, because he erroneously states that 'the claimant's last

7

IQ scores were all at 70 or above.'" **Mendez**, 439 F.3d at 361. In fact, according to the administration's regulations, Mendez's IQ scores were regularly below 70.

In addition, the circuit court stated that the ALJ provided inadequate reasons for concluding that Mendez did not meet the second criteria of the listing. The circuit court found that the ALJ placed undue weight on Mendez's household activities, did not provide an adequate credibility determination, and "failed to consider the totality of Mendez's impairments." **Mendez**, 439 F.3d at 363. This court does not conclude, as the Commissioner urges, that these errors by the ALJ can be characterized as being "merely remanded for further articulation." The government's position was not merely unarticulated; it was subject to legal and factual error and as a consequence was not substantially justified.

The government argues in the alternative that the fees sought by Mendez are unreasonable. The plaintiff has the burden of proving that the fees she seeks are reasonable by submitting "evidence in support of the hours worked and rates claimed." **Hensley v. Eckerhart**, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). See also 28 U.S.C. §2412(d)(1)(B).  In formulating a fee calculation, the plaintiff must exercise good billing judgment, which recognizes that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." **Hensley**, 461 U.S. at 434, 103 S.Ct. at 1940.  According to the Supreme Court,

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1039-40.  The district court may also reduce an award for inadequately documented hours, hours that were not reasonably expended, and "for any portion of the litigation in which the party has unreasonably protracted the proceedings." 28 U.S.C. §2412(d)(2)(D); *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990); *Hensley*, 461 U.S. at 433-34, 103 S.Ct. at 1939-40.

The Commissioner argues that because different personnel within the law firm worked at the successive stages of this case, redundancy naturally arises as one attorney takes over for another. Though this generally may be accurate, the record reveals few instances in which the efforts by Mendez's attorneys overlapped or exceeded hours that properly would be billed to a client. A junior attorney, Timothy Sprague, drafted the opening brief on behalf of Mendez in 54.5 hours. Mendez's lead attorney, Frederick Daley, reviewed this draft for almost 9 hours. Finally, after service of a 27-page response by the Commissioner, raising, among other arguments, significant challenges to the application of the 12.05 Listings, a law clerk, S. Blaz, spent 11.35 hours drafting a reply brief. The Commissioner also raises this challenge regarding the briefing before the Court of Appeals. The attorney H. Aloe spent 39.8 hours on this brief, which was reviewed by Daley for 6.25 hours.

9

The parties spend significant energy attempting to state general averages for drafting briefs in Social Security cases. The court is reluctant to follow their lead. **Hensley** requires a case-specific approach to the EAJA determination. The conclusions in other Social Security appeals may provide some evidence of reasonableness, but the determination ultimately springs directly from the individual case before the court. See e.g. **Dunn v. Shalala**, 1995 WL 23116 at *7 (N.D. Ill. 1995) ("The court reminds the Secretary that each case arises out of a unique factual scenario which must be analyzed in light of the applicable cases, rulings and regulations.").

Based upon the scope of the record, at more than 400 pages, and the number of issues raised by the parties, the court finds nothing unreasonable about either the division of labor or the total number of hours spent in briefing this case before the district and appellate courts. See e.g. **Habitat Education Center v. Bosworth**, 2006 WL 839166 at *5 (E.D. Wis. 2006)("When a number of lawyers work on a case, some duplication is inevitable and not inherently unreasonable.") The Commissioner's objection that attorney Marcie Goldbloom's time is entirely duplicative regards only two hours of time and fails to consider the reasonableness of a senior attorney spending a nominal amount of time reviewing a brief or participating in a mock oral argument for just 30 minutes.

Mendez further seeks to recover fees based upon 43.9 hours spent by attorney Barbara Borowski preparing for the 10-minute

oral argument before the Court of Appeals. Due to the pressures of overlapping hearings faced by Mendez's firm, Borowski was required to argue the appeal without the benefit of having worked on the case previously. The court finds that it is reasonable to allow some additional hours for the attorney to familiarize herself with the case and to conduct mock hearings with senior attorneys. *See e.g.* **Nelson v. Sullivan**, 776 F.Supp. 1265, 1268 (N.D. Ill. 1991)("[T]he prudent lawyer is well advised to prepare for oral argument by having another lawyer familiar with the case play the role of a badgering appellate judge - if only to make sure that every tough question has been anticipated.").

Though mindful of the value of preparedness, the court finds that 43.9 hours to prepare for the oral argument is excessive. The time logs indicate repetitive instances in which the attorney was "preparing for" the argument, "practicing" for the argument, outlining the argument, and conducting a mock argument. The log also indicates multiple entries stating that the attorney was reading and "rereading" the ALJ's decision.

This conclusion gains support from the concentration of hours claimed by the attorney. She indicated that she spent 13.5 hours in a single day preparing for this argument, followed by another 9.2 hours the next day, and another 6.3 hours again the following day. Though Mendez's success in her appeal likely is attributable to her attorney's diligence, the court finds that 43.9 hours preparing for an oral argument, when over 40 hours already had been spent writing the briefs for the appeal, is

11

beyond that which would be reasonably billed to a client. *See e.g.* ***Williams v. Apfel***, 2001 WL 199505 at *5 (N.D. Ill. 2001) (granting a fee award based upon 52.5 hours that included drafting the appellate brief *and* preparing for oral argument before the Seventh Circuit); ***Banks v. Barnhart***, 2003 WL 22019796 at *6 (N.D. Ill. 2003) (granting fees for 7.2 hours of oral argument preparation). The court concludes that the attorney's log includes 17.45 hours that duplicate efforts already accounted for in her time sheets and in the efforts already completed in drafting the appellate briefs. The total hours requested by Mendez will be reduced by this amount.

   Finally, the Commissioner objects to accounting for the time Attorney Heath Aloe spent on the table of contents, table of authorities, and electronically filing the appellate brief. The court agrees that these efforts are not traditionally compensated at attorney rates. Accordingly, 3.6 hours will be removed from the 2005 attorney hours and added to the law clerk/paralegal total. In addition, the court agrees that the rate sought for the law clerk, Suzanne Blaz, is excessive for some of the activities she performed. Sending, resending, and acquiring various forms and sending faxes cannot be billed at $100 per hour. *See **Spegon v. Catholic Bishop of Chicago***, 175 F.3d 544, 553 (7th Cir. 1999). However, Blaz's time also included drafting arguments and researching applicable law. Based upon Blaz's entries and experience, the court will permit 11.85 hours at the $100 per hour rate and 5 hours at the rate of $75/hour.

In sum, the court will award EAJA fees of $28,485.09. This figure includes 63.4 attorney hours in 2003 ($148.75/hour); 2 attorney hours in 2004 ($151.25/hour); 60.45 attorney hours in 2005 ($156.25/hour); 49.36 attorney hours in 2006 ($157.76/hour); 11.45 law clerk hours ($100/hour); and 5 hours at $75.00/hour.

_____

For the forgoing reasons, the Commissioner's motion for relief under Federal Rule of Civil Procedure 60(b) (DE 40) is **GRANTED**. The plaintiff's application for fees is **GRANTED IN PART**. Plaintiff's counsel is awarded fees in the amount of $28,485.59.

ENTERED this 23rd day of October, 2006

                                             s/ ANDREW P. RODOVICH
                                               United States Magistrate Judge